## Case No. 830.

**BALTIMORE & O. R. CO. v. VAN NESS et al.**

[4 Cranch, C. C. 595.][1]

Circuit Court, District of Columbia. Nov. Term, 1835.

EMINENT DOMAIN—PROCEDURE—CONSTRUCTION OF STATUTES—AMENDMENTS — MISRECITAL OF DATE OF PRIOR ACT.

1. The time, to extend and construct the Baltimore and Ohio Railroad into and within the District of Columbia, given by the act of congress of March 2, 1831, c. 84, [4 Stat. 476, c. 85,] was extended by the act of February 26, 1834, c. 11, [4 Stat. 672,] to another period of four years.

2. The act of March 3, 1835, c. 38, [4 Stat. 757,] is not void because its title misrecites the date of the act to which it is supplementary; nor is it confined to the mere construction of the road; but gives authority also to condemn land for the use of the company; nor is it void because its title purports it to be an act supplementary to an act which expired by its own limitation; it being revived by a subsequent act.

3. If the act of 1831 expired by the limitation contained in its 5th· section, it was revived by the act of February 26, 1834.

4. It is not necessary that the jury should be sworn on the lot to be condemned. It is sufficient that they meet on the lot. They may be sworn on another lot.

5. Notice, on the 27th of April, that the jury would meet on the land, on the 1st of May, to take the inquisition, is sufficient.

6. The railroad is a road for public use, and land may be taken therefor, upon just compensation being made.

Several inquisitions were taken, upon several warrants issued by a justice of the peace for the county of Washington, against D. Carroll, John A. Wilson, D. A. Hall, and Moses Tabbs and others, under the act of congress of March 3, 1835, c. 38, (4 stat. 757,) entitled "An act supplementary to an act entitled 'an act to authorize the extension, construction, and use of a lateral branch of the Baltimore and Ohio Railroad into and within the District of Columbia,' passed December, 1829." The act alluded to was not passed in December, 1829, but on the 2d of March, 1831, c. 84, [4 Stat. 476, c. 85.] These inquisitions being returned to the clerk's office by the marshal,

Mr. R. S. Coxe, for the defendants, moved the court to set them aside, for the following reasons:

1. Because there is no authority given by

[1] [Reported by Hon. William Cranch, Chief Judge.]

any act of the congress of the United States to warrant the said proceedings.

2. Because the said proceedings are wholly irregular and unauthorized by any law.

3. Because the jury did not estimate the comparative advantages and disadvantages of the contemplated railroad; but, in estimating the same, proceeded upon unfair and unequal principles.

4. Because the jury heard illegal evidence.

5. Because there was no lawful oath administered to the witnesses.

6. Because there has been no proper or lawful return of the said proceedings.

7. Because there was no legal or sufficient notice to the owners of the property through which the said road is laid.

Mr. Coxe contended that the act of March 3, 1835, [4 Stat. 757, c. 38,] was void, because its title referred to an act passed in December, 1829, when no such act existed; and that if it was not void, still it did not give any right to condemn land for the road; it only gives authority to locate and construct the road, but these powers do not imply a power to condemn the land. It refers to the act of 1831, which had expired by its own limitation, because the road was not commenced within a year after passing the act. If it was revived by the act of February 26, 1834, c. 11, the act of 1835 should have been supplementary to the act of 1834, and not to the expired act of 1831.

He contended, also, that the jury should have been sworn on the land, whereas the jury were sworn in all the cases, upon the land of Mr. Wilson only. That the act of 1831 only provides for the mode of proceedings by the marshal and jury; not as to any ulterior proceedings, or the return, or the jurisdiction of this court.

Mr. J. Dunlop, contra. The acts of 1831, 1834, and 1835 give the power to condemn the land, and refer to the Maryland charter of 1827, which requires the inquisition to be returned to the clerk, by whom it is to be filed in court, and it is to be affirmed, unless set aside by the court; and if set aside, a new inquisition is to be taken. There can be no doubt of the jurisdiction of the court.

The notices were all served on or before the 27th of April, and the jury was summoned for the 1st of May. There is no irregularity in the proceedings. There is no evidence that the jury estimated the comparative advantages and disadvantages; or that they proceeded upon unfair or unequal principles; nor that they received illegal evidence; nor in what manner the jurors were sworn. No error is shown in the return of the inquisitions.

Mr. Coxe, in reply, contended that the railroad is not a common highway. It is the exclusive right of the railroad company; and private property cannot be taken for private use. If it be doubtful whether congress has authorized the taking of private property,

the court would so construe their act as not to violate the constitution.

CRANCH, Circuit Judge, delivered the opinion of the court. The act of congress of the 3d of March, 1835, c. 28, (4 Stat. 757,) entitled an act supplementary to an act entitled "An act to authorize the extension, construction, and use of a lateral branch of the Baltimore and Ohio Railroad into and within the District of Columbia." passed December, 1829, (section 3,) authorizes the railroad company to construct their road through or over the lots or squares in the inquisitions mentioned, "upon the same terms, and with the same privileges as are prescribed for passing through the squares enumerated in the first section of the act;" that is, in the same manner and with the same rights and privileges which are granted to them by the act of the 2d of March, 1831, [4 Stat. 476,] "for the construction of their said road within the District of Columbia beyond the limits of the city of Washington, any thing in the said act notwithstanding." By the first section of that act (March 2, 1831) the railroad company are authorized to exercise the same rights, powers, and privileges, and be subject to the same restrictions in the extension and construction of this road, as they may exercise, or are subject to, under and by virtue of their charter of February 28. 1827, in the extension and construction of any railroad in Maryland, and are entitled to the same rights, &c., provided that before they proceed to construct any railroad on any land, &c., they shall first obtain the assent of the owner, &c.; but if they cannot obtain such assent, they may apply to a justice of the peace of the county of Washington, who shall issue his warrant to the marshal to summon a jury of twenty inhabitants of the district, not interested, &c., "to meet on the land," on a day, not less than three nor more than fifteen days after issuing the warrant, to proceed to value the damages which the owner or owners of any such land will sustain by the use or occupation of the same required by the said company; and the proceedings, duty, and authority of the said marshal, in regard to such warrant and jury, and the oath or affirmation to be administered, and inquisition to be made and returned, shall be the same as are directed and authorized, in regard to the sheriff, by the fifteenth section of the act of assembly of the state of Maryland incorporating the said Baltimore and Ohio Railroad Company; and all the other proceedings in regard to such jury, and the estimating and valuation of damages, and the payment, or tender of payment of any damages ascertained by such valuation, and effect thereof, and of the view of any lands or other property or materials, as to giving the said company a right to use the same for the use or construction of any railroad within the said district as hereby authorized, shall in every case, and in every respect, be the same as is provided in and by the above-mentioned act of incorporation, in regard to the railroad thereby authorized to be constructed by the said company."

But, by this act of March 2, 1831, the railroad company were forbidden to cross any private property in the city of Washington, even with the consent of the owner. This prohibition was the cause of the act of March 3, 1835.

By the fifteenth section of the act of Maryland of February 28, 1827, each party is to strike out four of the twenty jurors, and the remaining twelve are to act as the jury of inquest, and the sheriff is to administer an oath to each juror that he "will justly and impartially value the damages which the owner or owners will sustain by the use or occupation of the same required by the said company;" and the jury, in estimating such damages, shall take into the estimate the benefit resulting to the said owner or owners, from conducting such railroad through, along, or near to the property of such owner or owners; but only in extinguishment of the claim for damages; and the jury shall reduce their inquisition to writing, and shall sign and seal the same; and it shall then be returned by the said sheriff to the clerk, or prothonotary of his county, as the case may be; and, by such clerk or prothonotary, filed in his court, and shall be confirmed by said court, at its next session, if no sufficient cause to the contrary, be shown; and, when confirmed, shall be recorded by said clerk or prothonotary, at the expense of said company; but if set aside the court may direct another inquisition to be taken in the manner above prescribed; and such inquisition shall describe the property taken, or the bounds of the lands condemned, and the quantity or duration of the interest in the same, valued for the company; and such valuation, when paid, or tendered to the owner or owners of the said property, &c., shall entitle the company to the estate and interest in the same thus valued, as fully as if it had been conveyed by the owner or owners of the same, &c.

Upon consideration of the proceedings in these cases, and the several acts aforesaid, the court is of opinion,

1. That the said proceedings are warranted by law.

2. That they are regular.

3. That it does not appear that the jury did not consider the benefits as well as the disadvantages.

4. That it does not appear that illegal evidence was received.

5. Nor that the witnesses were not properly sworn.

6. That the return of the marshal is correct in form.

7. The notice was sufficient.

Another objection, suggested in the argument, was, that it is taking private property for private use, which is not authorized by

the constitution. The fifth amendment of the constitution of the United States says, that private property shall not be taken for public use without just compensation. But the objection is that private property is taken for private use, with just compensation; which is not within the prohibition of the constitution; although it would be an arbitrary proceeding. But this railroad, although it may be profitable to the stockholders, is also a great public benefit. It does not prevent the public from enjoying all the advantages which they enjoyed before, and gives them a cheaper, safer, and more expeditious mode of travelling than they would otherwise have. If it may not be called a common highway, yet it is really a common good. It is a great public convenience. The land is really taken for public use. The condemnation of land, for such purposes, has been so general, and so extensive, for many years, that it may well be considered as established by the law of the land. Every state of the Union has granted charters for such objects, with similar powers. The rates of toll, &c., are established by law, which could not be done unless the object was of a public nature; nor would the legislature have power to restrain them in the exercise of their private rights. The state of Maryland also has a great interest in the road, as it is to receive five per cent. upon the gross receipts of tolls from passengers; and has an option to take a large portion of the stock within a limited time after the completion of the road. The condemnation of the land, therefore, is clearly for the Maryland public use; even if it be not for the use of the whole American public.

If the constitutionality of a law be doubtful, the court is not at liberty to declare it void; but is bound to give it effect. In Fletcher v. Peck, 6 Cranch, [10 U. S.] 87, Mr. Chief Justice Marshall, in delivering the opinion of the court, said: "The question whether a law be void for its repugnancy to the constitution, is, at all times, a question of much delicacy, which ought, seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled, by duty, to render such a judgment, would be unworthy of its station could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other." Again he said: "It may well be doubted whether the nature of society and of government does not prescribe some limits to the legislative power; and if any be prescribed, where are they to be found, if the property of an individual fairly and honestly acquired, may be seized without compensation?" In the case of Horne's Lessee v. Dorrance, 3 Dall. 304, 312,

[Van Horne v. Dorrance, 2 Dall. (2 U. S.) 304, 312,] the circuit court of the United States for the district of Pennsylvania admit, that, in a case of necessity, of which the legislature is the sole judge, it may take the real estate from A. and give it to B., on making compensation, to be ascertained by a jury, although the constitution of Pennsylvania expressly declares that the right of acquiring, possessing, and protecting property is natural, inherent, and unalienable.

So that, whether the railroad is a public or a private object, in itself, the legislature, having deemed it to be so far a public object as to be worthy of their control and regulation, and of the exercise of their power to apply private property to its use, upon making just compensation, to be ascertained by a jury, we cannot say that the provisions of the act, which authorize the condemnation of land, for such a road, are void, as being unconstitutional, or as contravening any of the principles of natural justice.

The inquisitions were all confirmed, (MORSELL, Circuit Judge, doubting as to the last point.)